IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EMPIRE ABRASIVE EQUIPMENT COMPANY, LP,<br>    Plaintiff, | :<br>:<br>:<br>: |
| v. | :    CIVIL ACTION NO. 16-6331 |
| ACCEPTANCE INSURANCE COMPANY,<br>    Defendant. | :<br>:<br>:<br>: |

## MEMORANDUM OPINION

**Rufe, J.**                                                                                                                  **March 26, 2018**

      Plaintiff Empire Abrasive Equipment Company, LP ("Empire"), a manufacturer of air blasting equipment, brought suit against its Nebraska-based insurer, Defendant Acceptance Insurance Company ("AIC"), seeking indemnification for Empire's liabilities and legal expenses in defending a large number of personal injury suits. AIC is currently in state rehabilitation proceedings in Nebraska, and seeks to dismiss or stay Empire's suit on the grounds of the "full faith and credit clause" of the United States Constitution,[1] the *Burford* abstention doctrine,[2] and choice of law. For the reasons discussed below, the motion will be denied without prejudice.

## I.    BACKGROUND

      The following facts are assumed to be true for purposes of Defendant's motion.

      Empire is a Pennsylvania corporation that for some period of time manufactured and sold equipment used for air blasting. In a number of lawsuits across the country, Empire, along with other equipment manufacturers, was alleged to have caused serious injury to users of their

---

[1] Art. IV, § 1, as codified in 28 U.S.C. § 1738.

[2] *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).

products and others through exposure to silica dust ("the Underlying Actions"). Empire has incurred substantial liability and litigation costs in defending and settling those suits.

Empire had multiple insurance policies for liabilities and legal expenses. However, only one of these policies, which Empire purchased from AIC in 1992, covered silica-related claims where the date of first exposure occurred after July 1, 1986 ("the AIC policy"). The liability limit for this policy was $1 million, excluding legal defense costs. At some point in time, AIC and Empire's other insurers entered into a Confidential Defense and Indemnity Cost-Sharing Agreement ("CSA"), in which they divided the costs of defending and indemnifying the Underlying Actions among themselves. Empire was not a party to the agreement. Empire alleges that although it would have been in Empire's interest for AIC to indemnify post-July 1986 exposure claims only, AIC instead responded to $785,000 in claims arising from *pre-*July 1986 exposure pursuant to the CSA. As a result, the AIC policy was exhausted in May 29, 2013, leaving Empire with no remaining coverage for post-1986 exposure for silica-related claims and legal expenses.

In April 2008, AIC was placed in state rehabilitation proceedings pursuant to the Nebraska Insurers Supervision, Rehabilitation, and Liquidation Act.[3] As part of the rehabilitation proceedings, the District Court of Lancaster County, Nebraska entered an injunction against, *inter alia*, "[i]nstitution or further prosecution of any actions or proceedings," "[t]he obtaining of . . . judgments . . . against AIC, and its assets or its policyholders," and "[a]ny . . . threatened or contemplated action that might lessen the value of AIC assets or prejudice the

---

[3] Neb. Rev. Stat. §§ 44-4801, *et seq.* It is unclear whether the CSA was signed before or after AIC was placed in rehabilitation proceedings.

2

right of policyholders, creditors or share holders or the administration of any proceeding under the Nebraska Insurers Supervision, Rehabilitation and Liquidation Act."[4]

Empire filed this suit seeking (1) declaratory judgment that AIC must continue to defend and indemnify Empire, that the AIC policy shall only apply to claims where the first exposure was after July 1, 1986, and that the limits of the AIC Policy have not been exhausted (Count I); and (2) damages for AIC's alleged breach of contract in refusing to defend and indemnify claims for exposure occurring after July 1, 1986 (Count II).

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), dismissal of a complaint for failure to state a claim upon which relief can be granted is appropriate where a plaintiff's "plain statement" lacks enough substance to show that he is entitled to relief.[5] In determining whether a motion to dismiss should be granted, the court must consider only those facts alleged in the complaint, accepting the allegations as true and drawing all logical inferences in favor of the non-moving party.[6] Courts are not, however, bound to accept as true legal conclusions couched as factual allegations.[7] Something more than a mere *possibility* of a claim must be alleged; a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."[8] The complaint must set forth "direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory."[9] In deciding a motion to dismiss,

---

[4] Order of Injunction, *State of Nebraska v. Acceptance Insurance Co.*, Case No. CI 08-1434 (Apr. 10, 2008) (Doc. No. 4-2 at 25-26).

[5] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

[6] *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994); *Fay v. Muhlenberg Coll.*, No. 07-4516, 2008 WL 205227, at *2 (E.D. Pa. Jan. 24, 2008).

[7] *See Twombly*, 550 U.S. at 555, 564.

[8] *Id.* at 570.

courts may consider "only allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim."[10]

### III. DISCUSSION

#### A. Full Faith and Credit

At the outset, AIC asserts that Empire's claims must be dismissed because this Court must accord full faith and credit to the Order of Rehabilitation and Order of Injunction issued by the Nebraska state court. However, neither the Order of Rehabilitation nor the Order of Injunction addressed the merits of the claims presented by AIC in this suit and thus neither is entitled to preclusive effect. The full faith and credit clause, as codified in 28 U.S.C. § 1738, requires that state court decisions be given the same preclusive effect in federal court as they would be given in the courts of the rendering state.[11] Nebraska courts accord preclusive effect to state court decisions only when four conditions are met: (1) the identical issue was decided in a prior action, (2) there was a judgment on the merits which was final, (3) the party against whom the rule is applied was a party or in privity with a party to the prior action, and (4) there was an opportunity to fully and fairly litigate the issue in the prior action.[12] Here, because neither the Order of Rehabilitation nor the Order of Injunction addressed the merits of the claims alleged by Empire in this suit, neither would be accorded preclusive effect under Nebraska law, and neither is entitled to full faith and credit by this Court.[13]

---

[9] *Id.* at 562 (internal quotation marks and citation omitted).

[10] *Brown v. Daniels,* 128 F. App'x 910, 913 (3d Cir. 2005) (quoting *Lum v. Bank of America,* 361 F.3d 217, 222 n.3 (3d Cir. 2004)).

[11] *Delaware River Port Auth. v. Fraternal Order of Police*, 290 F.3d 567, 573 (3d Cir. 2002).

[12] *DeBoer v. Glenn*, No. A-01-386, 2002 WL 1610367, at *10 (Neb. Ct. App. July 23, 2002) (citing *Stewart v. Hechtman,* 581 N.W.2d 416 (1998)).

[13] *Boyce v. Legion Ins. Co.*, No. 02-1693, 2002 WL 32341783, at *1 n.2 (E.D. Pa. Oct. 31, 2002) (declining to accord full faith and credit to a rehabilitation because it was not a final judgment on the merits of the plaintiff's

Moreover, state courts lack authority to enjoin *in personam* proceedings in the federal courts.[14] Thus, the Nebraska court's injunction against any legal proceedings against AIC cannot, by its own force, prohibit this Court from adjudicating Empire's claims.

**B. Choice of Law**

AIC also contends that Empire's claims should be dismissed because they rely on principles of Pennsylvania law that conflict with Nebraska law, and Nebraska law, not Pennsylvania law, should apply to Empire's claims. At this stage of the proceedings, the record does not allow the Court to conclude that Nebraska law should apply.

Because this is a diversity case, the Court must apply the choice-of law-rules of the forum state, Pennsylvania.[15] Pennsylvania applies a flexible approach to choice of law, under which the courts must determine the state with the "most interest in the problem."[16] Specifically, when a true conflict of law exists, courts must consider the "interests and policies that may be validly asserted by each jurisdiction"; "the location of the insured risk"; and the following contacts with respect to the contract itself: (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and

---

claims); *Dalicandro v. Legalgard, Inc.,* No. 99-3778, 2001 WL 1428359, at *4 n.7 (E.D. Pa. Nov. 14, 2001) (reaching the same conclusion with respect to a state court liquidation order).

[14] *See Donovan v. City of Dallas,* 377 U.S. 408, 412-13 (1964) (reiterating the "old and well-established judicially declared rule that state courts are completely without power to restrain federal-court proceedings in *in personam* actions" (footnote omitted)); *Hawthorne Sav. F.S.B. v. Reliance Ins. Co. of Illinois*, 421 F.3d 835, 849–51 (9th Cir. 2005), *amended*, 433 F.3d 1089 (9th Cir. 2006) (declining to accord full faith and credit to the stay of litigation contained in the liquidation and rehabilitation orders issued by the Pennsylvania Commonwealth Court in part on the grounds that state courts lack authority to enjoin litigation in federal courts).

[15] *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 226 (3d Cir. 2007) (citing *Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487 (1941)).

[16] *Hammersmith*, 480 F.3d at 227 (citing *Griffith v. United Air Lines Inc.*, 203 A.2d 796, 806 (1964)).

(5) the domicile, residence, nationality, place of incorporation and place of business of the parties.[17]

In arguing that Nebraska law applies to Empire's claims, AIC relies primarily on the assertion that its ongoing rehabilitation proceedings conclusively establish that Nebraska is the forum with the greatest government interest in seeing its law applied.[18] But AIC cites no case law in support of this assertion, and it is not at all clear to the Court that the rehabilitation proceedings should trump all other interests and contacts that Pennsylvania may have in this case. At the time the insurance contract was signed, Empire was conducting business in Pennsylvania.[19] At this stage of the proceeding, the Court lacks a complete record as to the location of the claims against Empire, the state(s) in which AIC and Empire conducted business, or the state(s) in which the policy at issue was negotiated and delivered. Accordingly, AIC's motion to dismiss on choice-of-law grounds will be denied as premature.

### C. *Burford* Abstention

Finally, AIC asks that the Court abstain from deciding Empire's claims under the *Burford* abstention doctrine by dismissing Count I and staying Count II until the rehabilitation proceedings conclude or Empire obtains leave from the Nebraska state court to proceed on its claims.[20]

---

[17] *Hammersmith*, 480 F.3d at 231-35.

[18] AIC's Reply at 8; AIC's Mem. at 12.

[19] The parties have not pointed to any choice of law provision in the contract itself.

[20] While courts abstaining under *Burford* will dismiss claims for equitable relief without prejudice, the Third Circuit has held that a court abstaining from claims for damages should retain jurisdiction and stay those claims until the conclusion of the state proceedings. *See Feige v. Sechrest,* 90 F.3d 846, 849 (3d Cir. 1996); *Dalicandro v. Legalgard, Inc.*, No. 99-3778, 2001 WL 1428359, at *4 (E.D. Pa. Nov. 14, 2001).

Abstention from the exercise of federal jurisdiction is the exception, not the rule.[21] "The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a district court to adjudicate a controversy properly before it."[22] Under the *Burford* abstention doctrine, federal courts should avoid "needless disruption of an important, complex state regulatory system."[23] In determining whether *Burford* abstention should apply, courts must undertake a "two-step analysis."[24] The first question is whether "timely and adequate state-court review" is available.[25] If such review is available, the District Court next considers whether the case (1) implicates a regulatory scheme that "involves a matter of substantial public concern;" (2) "whether it is the sort of complex, technical regulatory scheme to which the *Burford* abstention doctrine usually is applied;" and (3) "whether federal review of a party's claims would interfere with the state's efforts to establish and maintain a coherent regulatory policy."[26]

Here, AIC has not established that timely and adequate state-court review of Empire's claims is available within the context of the AIC rehabilitation proceedings as currently constituted. Under the Nebraska statute, there are three forms of receivership, including the least intrusive "supervision" proceedings, the more flexible "rehabilitation" proceedings, and the most serious "liquidation" proceedings, under which the director of insurance petitions a court for the

---

[21] *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813 (1976).

[22] *Id.* (quoting *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188 (1959)).

[23] *Boyce v. Legion Ins. Co.*, No. 02-1693, 2002 WL 32341783, at *1 (E.D. Pa. Oct. 31, 2002) (citing *Lac D'Amiante Du Quebec, Ltee v. American Home Assurance Co.,* 864 F.2d 1033, 1038 (3d Cir. 1988)).

[24] *Riley v. Simmons*, 45 F.3d 764, 771 (3d Cir. 1995).

[25] *Id.* (citing *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 361 (1989)).

[26] *Gov't Employees Ins. Co v. Tri Cty. Neurology & Rehab. LLC*, No. 17-2113, 2018 WL 345046, at *2 (3d Cir. Jan. 10, 2018) (quoting *Chiropractic Am. v. Lavecchia*, 180 F.3d 99, 105 (3d Cir. 1999)).

purpose of taking control of the insurer and commencing a centralized claims proceeding.[27] Importantly, a rehabilitation proceeding, unlike a liquidation proceeding, does not require notice to policy holders or institution of a claims process.[28] Rather, the rehabilitator retains broad discretion in taking any action deemed "necessary or appropriate to reform and revitalize the insurer," including a change in management or a merger with another insurer.[29]

In reviewing a district court's decision to abstain in light of pending rehabilitation proceedings under the Nebraska Act, the Seventh Circuit Court of Appeals found that the record was inadequate to support *Burford* abstention because there was no indication that the Rehabilitator had instituted any specialized proceedings through which the plaintiff's claims could be adjudicated.[30] The Nebraska rehabilitation proceedings are thus distinguishable from the proceedings that the Third Circuit Court of Appeals found warranted abstention in a case assessing a New York state liquidation proceeding, where the liquidator was obligated to review and respond to all claims made against the insurer's estate, thus providing an orderly process for ensuring that all claims would be centralized "into a single forum where they can be efficiently and consistently disposed of."[31] Here, in contrast, without evidence of additional specialized proceedings, there is no indication that AIC's current rehabilitation proceedings will provide a forum for adjudicating Empire's claims. Should any state claims review process be initiated,

---

[27] Neb. Rev. St. Ann. §§ 44-4809, 44-4813 - 4815, 44-4816 - 4859; *see also Prop. & Cas. Ins. Ltd. v. Cent. Nat. Ins. Co. of Omaha*, 936 F.2d 319, 324 (7th Cir. 1991) (describing the various receiverships).

[28] *Compare* Neb. Rev. Stat. Ann. §§44-4813 - 4815, *with* Neb. Rev. Stat. Ann. §§ 44-4822, 44-4835 - 4839.

[29] *Prop. & Cas.*, 936 F.2d at 324 (citing Neb. Rev. Stat. Ann. §§ 44-4814(2), 44-4814(4)).

[30] *Id.* at 323 (finding evidence insufficient to uphold district court's decision to abstain in dispute over reinsurance agreement when Nebraska's director of insurance placed the defendant into rehabilitation; no indication that rehabilitator had attempted to commence proceeding to evaluate creditor claims against the defendant or to indicate that such proceeding, if commenced, would provide technical oversight or concentrated review over the plaintiff's claims).

[31] *Lac D'Amiante*, 864 F.2d at 1040, 1045.

abstention may indeed become appropriate, and AIC may renew its request to stay and dismiss Empire's claims at that time. However, based on the current record, the Court cannot conclude that adequate and timely review is available for Empire's claims in Nebraska, and AIC's motion for *Burford* abstention will thus be dismissed without prejudice.

## IV. CONCLUSION

For the reasons discussed above, AIC's motion to dismiss or stay will be denied without prejudice. An order follows.